## Case No. 13,563.

### In re STUPP.

[12 Blatchf. 501.] 1

Circuit Court, S. D. New York. May 18, 1875.

EXTRADITION — HABEAS CORPUS — CERTIORARI — CRIMINALITY OF ACCUSED—AUTHORITY OF PRESIDENT.

1. The provisions of the Revised Statutes of the United States, in regard to the issuing of writs of habeas corpus and certiorari by the courts and judges of the United States, examined.

[Cited in Re Coleman, Case No. 2,980.]

[Cited in Re Snell, 31 Minn. 111, 16 N. W. 692.]

2. Where a person is held in custody under a commitment by a commissioner, for surrender under a treaty of extradition, both writs may properly be issued.

[Cited in Ex parte Perkins, 29 Fed. 908.]

3. On the returns to such writs. in such a case, it is not the duty of the court, nor has it the power, to revise the decision of the commissioner on the question of fact as to the criminality of the accused.

[Followed in Re Vandervelpen, Case No. 16,-844.]

4. After a commitment of the accused for surrender, and even after his discharge on habeas corpus has been refused, the president may lawfully decline to surrender him, either on the ground that the case is not within the treaty, or that the evidence is not sufficient to establish the charge of criminality; but the statute gives no right of appeal or review on the merits, to be exercised by any court or judicial officer.

[Cited in Re Thomas. Case No. 13,887. Followed in Re Wahl, Id. 17,041. Cited in U. S. v. Brawner, 7 Fed. 87; Re Byron, 18 Fed. 723; U. S. v. Doherty, 27 Fed. 733.]

5. The court issuing the writ of habeas corpus must inquire and adjudge whether the commissioner acquired jurisdiction of the matter, by conforming to the requirements of the treaty and the statute: whether he exceeded his jurisdiction; and whether he had any legal or competent evidence of facts before him, on which to exercise a judgment as to the criminality of the accused.

[Cited in Castro v. De Uriarte, 12 Fed. 251.]

6. But, the court is not to inquire whether the legal evidence of facts before the commissioner was sufficient or insufficient to warrant his conclusion: nor, if there was legal and competent evidence of facts before the commissioner, for him to consider in making up his decision as to the criminality of the accused, is the court to hold the proceedings illegal, and to discharge the prisoner, because some other evidence was introduced which was not legal or competent, but was held to be so by the commissioner, and was considered by him on the question of fact, or because the court, on a consideration of all the evidence which the commissioner considered, would.have come to a different conclusion, or because the court. on an exclusion of such of the evidence as it may think was not legal or competent, would come, on the rest of the evidence, to a different conclusion of fact from that at which the commissioner arrived.

[Cited in Re Wiegand, Case No. 17,618; Re Fowler, 4 Fed. 317; Re Morris, 40 Fed. 824.]

7. The provisions of the 2d section of the act of August 12th, 1848 (9 Stat. 302), and of the act of June 22d, 1860 (12 Stat. 84), and of section 5271 of the Revised Statutes of the United States, in regard to documentary evidence from abroad, in extradition cases, examined.

8. Section 5271 of the Revised Statutes prescribes further requisites, beyond those prescribed by the 2d section of the act of 1848, in respect to the admissibility in evidence of copies of the depositions on which an original warrant of arrest was granted in the foreign country, and supersedes the 2d section of the act of 1848.

[Cited in U. S. v. Claflin, Case No. 14,799; Re Fowler, 4 Fed. 308.]

9. But. the act of 1860 is not affected by the Revised Statutes, and is still in force, and applies to all depositions, documents and papers from abroad offered in evidence in extradition cases, except the depositions on which an original warrant of arrest was granted in the foreign country.

10. Copies of certain depositions from abroad in this case, taken subsequently to the date of the original warrant of arrest issued abroad, held admissible under the act of 1860. and as constituting. with oral evidence taken before the commissioner. legal testimony, tending to prove the criminality of the accused. and materials for a decision of the commissioner on the question of fact, as to the criminality of the accused.

11. The case being one under a treaty with Belgium, in respect to offences committed in Belgium, the certificate of the minister resident of the United States to Belgium, purporting to be made under the act of 1860, which permits such officer to certify that the documents from abroad are properly and legally authenticated, so as to entitle them to be received in evidence of the criminality of the accused by the tribunals of the foreign country from which the accused escaped, certified that they were legally and properly authenticated, so as to entitle them to be received in evidence in support of the criminal charges mentioned therein, and for similar purposes mentioned in the 2d section of the act of 1848, and omitted the words "by the tribunals of Belgium." The documents were from the records of the tribunals of Belgium, and were authenticated by functionaries of Belgium: *Held*, that this was a sufficient compliance with the statute.

[Joseph Stupp. alias Carl Vogt, was charged with the crimes of murder, arson, and robbery, as having been committed in Brussels, in Belgium. He escaped to the United States. At the time there was no extradition treaty between Belgium and the United States, but Prussia made a demand on the United States for the extradition of Stupp. on the ground that he was a Prussian subject, and, as such, could be tried for the alleged offenses in Prussia, the offenses having been committed within the "jurisdiction" of Prussia. Stupp was arrested, and, while in the custody of the marshal, sued out a writ of habeas corpus before Judge Blatchford, in the

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

circuit court for the Southern district of New York. Upon the hearing, Judge Blatchford decided that the offenses were committed within the jurisdiction of Prussia. The writ was discharged. Case No. 13,562. Pending the issue of the warrant for surrender, the secretary of state submitted the question to the attorney general, who gave an opinion that the case was not within the jurisdiction of Prussia, and that the prisoner ought not to be surrendered. Upon this opinion the government refused the surrender of Stupp. Subsequently a treaty of extradition was concluded with Belgium, and Stupp was thereafter again arrested upon demand of the Belgian authorities. He again sued out a writ of habeas corpus, and the case is now heard upon return to the writ.]

John D. Townsend and Theodore Aub, for prisoner.

Frederic R. Coudert, for the Belgian Government.

Before WOODRUFF, Circuit Judge, and BLATCHFORD, District Judge.

BLATCHFORD, District Judge. The prisoner has been committed to the custody of the marshal of the United States for this district, by a United States commissioner, to await the issuing by the president of a warrant for his surrender to the authorities of Belgium, under the treaty of extradition with that country, concluded March 19th, 1874 [18 Stat. 804], on a charge of having committed the crimes of murder and arson, at Brussels, in Belgium, on the night of the 1st, or the morning of the 2d, of October, 1871. He has been brought before this court on a writ of habeas corpus, and the proceedings which took place before the commissioner have been brought before this court on a writ of certiorari.

The power to issue writs of habeas corpus is given to this court and its judges by section 751 of the Revised Statutes. Section 752 enacts, that such writs are to be granted "for the purpose of an inquiry into the cause of restraint of liberty." Section 757 provides, that the person to whom the writ is directed shall certify the true cause of the detention of the person detained. Section 760 provides, that the person detained "may deny any of the facts set forth in the return, or may allege any other fact that may be material in the case." Section 761 provides, that the court or judge "shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice may require." Section 716 provides, that this court shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of its jurisdiction, and agreeable to the usages and principles of law.

As the prisoner in this case was in custody under the authority of the United States, within section 753 of the Revised Statutes, the power and duty of issuing the writ of habeas corpus existed; and, as the petition for such writ showed that the prisoner was held under a commitment made by a United States commissioner, as the result of proceedings under a treaty for extradition, it was proper to issue the writ of certiorari to the commissioner, to bring such proceedings before the court. This was necessary, in order to ascertain whether the commissioner had jurisdiction of the case. How far the court will revise the proceedings before the commissioner is another question.

It is contended, for the prisoner, that, whatever may have been the law or the practice, prior to the enactment of the Revised Statutes of the United States, it is now the duty of the court, and it has the power, to examine into the merits of this case, on the returns to the writs it has issued. Section 722 of the Revised Statutes provides, that the jurisdiction in civil and criminal matters conferred on the district and circuit courts by the provisions of title 13 of those statutes, (and which title embraces the jurisdiction in regard to the writs issued in this case,) and of title "Civil Rights," and of title "Crimes," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect, but, in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies, and punish offences against law, the common law, as modified and changed by the constitution and statutes of the state wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the constitution and laws of the United States, shall be extended to and govern the said courts, in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

Section 760 of the Revised Statutes, in addition to the provision before cited from it, enacts, that the return to the writ of habeas corpus, and all suggestions made against it, may be amended, before or after the same are filed, "so that thereby the material facts may be ascertained." It is urged, that the intention of the enactments cited in regard to the proceedings on the writ of habeas corpus is, that the court shall ascertain the facts on which the party is claimed to be held in custody, and shall then decide, as an original question, whether he ought to be held in custody thereon, without reference to the decision of the commissioner.

The language used in sections 760 and 761 of the Revised Statutes is substantially borrowed from the 1st section of the act of February 5th, 1867 (14 Stat. 385). That act was

passed to extend the power of the courts and judges of the United States, in granting writs of habeas corpus, to cases not provided for by previous legislation. The 14th section of the judiciary act of September 24th, 1789 (1 Stat. 81), restricted the power of the courts of the United States to issue writs of habeas corpus, in cases of prisoners in jail, to such as were in custody under or by color of the authority of the United States, or were committed for trial before some court of the same, or were necessary to be brought into court to testify. The act of March 2, 1833 (4 Stat. 634, § 7), extended the power to prisoners committed for any act done, or omitted to be done, in pursuance of a law of the United States, or any order, process or decree of any judge or court thereof. The act of August 29, 1842 (5 Stat. 539), extended the power to subjects or citizens of a foreign state, domiciled therein, confined under any authority or law, or process founded thereon, of the United States, or of any one of them, for any act done or omitted under any alleged authority claimed under the order of any foreign state, the validity and effect whereof depend upon the law of nations. The act of 1867 provided, that the several courts and judges of the United States, within their respective jurisdictions, in addition to the authority already conferred by law, should have power to grant writs of habeas corpus in all cases where any person might be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States. It further used this language: "The petitioner may deny any ·of the material facts set forth in the return, or may allege any fact to show that the detention is in contravention of the constitution or laws of the United States, which allegations or denials shall be made on oath. The said return may be amended by leave of the court ·or judge before or after the same is filed, as also may all suggestions made against it, that thereby the material facts may be ascertained. The said court or judge shall proceed, in a summary way, to determine the facts of the case, by hearing testimony and the argument of the parties interested, and, if it shall appear that the petitioner is deprived of his or her liberty in contravention of the constitution or laws of the United States, he or she shall forthwith be discharged and set at liberty." The various cases enumerated in the said acts of 1789, 1833, 1842 and 1867, as cases in which writs of habeas corpus may be issued, are specified in section 753 of the Revised Statutes. It is thus seen, that sections 760 and 761 of the Revised Statutes borrow from the act of 1867 what they contain as to denying the facts set forth in the return, and as to alleging other material facts, and as to amending the return and the suggestions made against it, so that thereby the material facts may be ascertained, and as to the proceeding in a summary way to determine the facts of the case, by hearing the testimony and arguments, and make such provisions applicable to all cases of habeas corpus, as well as to those enumerated in the act of 1867. The provision, that the court is "thereupon to dispose of the party as law and justice require," is not found, in those words, in the act of 1867, or in any enactment in regard to writs of habeas corpus, prior to the Revised Statutes. But neither those words, nor any other language in the sections of the Revised Statutes relating to the writ of habeas corpus, can, when properly construed, be regarded as intended to· have the effect, or as having the effect, of prescribing to the court any different rules of decision, in disposing of a case on habeas corpus, from those which were the proper rules of decision in disposing of such case prior to the enactment of the Revised Statutes.

The provision of section 757 is, that, as a return to the writ of habeas corpus, the true cause of the detention of the person detained shall be certified. Wherever the person is detained by virtue of process, the cause of his detention is the process. In the present case, it is the commitment by the commissioner, which carries with it the warrant of arrest; and the certiorari introduces the documents and papers put in evidence, and the oral testimony. The "facts" set forth in the return to the habeas corpus are not the particulars of the evidence on which the commitment was granted. Those "facts" are, the statement that there was a warrant of arrest issued by the commissioner in a case of extradition, and an examination into· evidence of. criminality, and a decision, and a commitment to await surrender. When the various sections of the Revised Statutes speak of denying the "facts" set forth in the return, and of alleging any other material "fact," and of ascertaining the material "facts," and of determining the "facts" of the case, they have no reference to the merits of the evidence which was put in before the commissioner, as tending to the conclusion of criminality. Where a person is held on process on a final judgment, after conviction, on a trial on an indictment, and a habeas corpus is issued, the return to the writ states, as the cause of his detention, the process, and, either on such return alone, or by the aid of a certiorari, the final judgment, the conviction, the fact of a trial, and the indictment, are brought before the court. These are the "facts" of the case, on the habeas corpus. The particulars of the evidence which led to the conviction are no part of such facts. In determining, on habeas corpus, the "facts" of the case, the court does not determine what were the facts of the transaction which constituted the crime of which the party was convicted. It only determines whether there was an indictment, a trial, a conviction, a final judgment, a sentence and process of execution, and jurisdiction of such proceedings. It does not

retry the case. So, in the present matter, to determine the "facts" of the case is not to retry the matter on the evidence, and determine what were the facts and particulars of the transactions constituting the alleged crimes.

The most recent case on the subject of habeas corpus, in the supreme court of the United States, is that of Ex parte Lange, 18 Wall. [85 U. S.] 163, at the October term, 1873. In that case, that court issued to a circuit court of the United States a writ of certiorari to bring before it the proceedings in the circuit court under which the petitioner was restrained of his liberty, and at the same time it issued a writ of habeas corpus to the marshal to produce the body of the petitioner. In the opinion delivered by the supreme court, care is taken to say, that the supreme court has authority to issue the writ, and to examine the proceedings of the circuit court, so far as may be necessary to ascertain whether the latter court has exceeded its authority, but that the supreme court disclaims any assertion of a general power of review over the judgments of the inferior courts in criminal cases, by the use of the writ of habeas corpus or otherwise. What is meant by ascertaining whether the circuit court has exceeded its authority, is shown by the fact, that the opinion states, that the supreme court proceeds to examine the case as disclosed by the returns to the two writs, to ascertain whether it appears that the court below had any power to render the judgment under which the petitioner was held, which was a. final judgment on a conviction on an indictment. Certainly, it cannot be successfully contended, that these provisions of the Revised Statutes, in regard to habeas corpus, have the effect to authorize a court of the United States which has no direct power given to it to review the final judgment of another court of the United States in a given case, to review such judgment on the merits, under the indirect authority of a habeas corpus. Yet, the general language of the Revised Statutes in regard to the proceedings on a habeas corpus, that authority is given to inquire into the cause of restraint of liberty, and to ascertain the material facts. and to determine the facts by hearing the testimony and arguments, and thereupon dispose of the party as law and justice require, is as applicable to a case where a party is in custody under process issued on the final judgment of a court of the United States, on a conviction on an indictment, as it is to a case where a party is in custody under any other process.

Nor is there anything in the provisions of section .722 of the Revised Statutes which requires any different rule to be applied to the decision of the present case from that which would have been applicable in the absence of that enactment. Under that section, the jurisdiction conferred on this court, in this case, by the provisions of the Revised Statutes in regard to habeas corpus, is required to be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect. Such jurisdiction is to be exercised in conformity with the laws in regard to proceedings in extradition cases, and in conformity with the laws in regard to the appellate jurisdiction of this court, as well as in conformity with the laws in regard to writs of habeas corpus. But, section 722 manifestly has reference not to the extent or scope of jurisdiction, or to the rules of decision, but to the forms of process and remedy. The laws of the United States are fully suitable to carry into effect the jurisdiction of this court in this case, and they are adapted to the object of such jurisdiction, and they are not deficient in any provision necessary to furnish suitable remedies to exercise and enforce such jurisdiction.

In the case of In re Henrich [Case No. 6,369], it was held, by this court, that, if a commissioner, sitting in an extradition case, assumes, on evidence which he regards as proving the charge of criminality, to commit the accused person for surrender, a court of the United States, or a judge thereof, can, on writs of habeas corpus and certiorari, review such evidence, and come to the conclusion that the evidence fails to support the charge, and thereupon discharge the accused from custody. In the opinion delivered in that case it was stated, in substance, that such was held to be the law of this court, because it was the judgment of the distinguished justice of the supreme court (Mr. Justice Nelson), who was then the presiding justice of this court; and, therefore, it was held, that the court would look into the evidence upon which the judgment of the commissioner rested, and would pass upon its weight as well as its competency. But, the court proceeded to say: "It should be understood, that, in the exercise of this power of revising, on habeas corpus, the judgment of the commissioner, this court will not reverse his action upon trifling grounds, or for mere errors in form. When designated by the court, he is fully empowered to hear and decide the questions of criminality, and, where he has legal evidence before him, this court will not reverse his judgment except for substantial error in law, or for such manifest error in fact as would warrant a court in granting a new trial for a verdict against evidence." In the opinion in that case, various earlier extradition cases, arising in this district, are cited, wherein it was distinctly held by various judges, that, on habeas corpus, the decision of the commissioner on the question of fact could not be reviewed. Those cases were In re Veremaitre [Case No. 16,915], before Judge Judson, in the district court; In re Kaine [Id. 7,598], before Judge Betts, in the circuit court; In re Heilbronn [Id. 6,323], before Judge Ingersoll, in the district court; and Ex parte Van Aernam [Id. 16,824], before Judge Betts, in the circuit court. In the case last cited, the view was held, that the circuit court could

not sit in review on the merits of the decision made by the commissioner, either on the facts or the law. The crime charged was uttering and publishing, in Canada, a forged draft, knowing it to be forged, with intent to defraud the party from whom the accused obtained money on the draft. The point taken, on the habeas corpus, was, that the false making of the draft was not a forgery, but was only a fraud, and, therefore, that the draft was not a forged draft. The court say: "If the commissioner had no legal jurisdiction over the case, or, if the mandate of the president under which the prisoner is more immediately confined, was issued without warrant of law, it is the duty of the court to discharge him. It is not disputed that the commissioner was empowered to inquire whether the crime of which the prisoner was accused had been committed by him, nor is it disputed that legal evidence was laid before him tending to prove the accusation, nor is it disputed that the commissioner, on the facts so placed before him, found that the prisoner had committed the offence. The exception to his action is, that he misjudged in point of law, and that the crime was not established by the evidence. If so, this, manifestly, was an error of judgment on the part of the commissioner, but it does not show that he had no jurisdiction. And, if the case were now before the court on writ of error or appeal, the decision of the commissioner would be a legitimate subject for its investigation. * * * In my view of the subject, this court, on the return before it of a writ of habeas corpus, has no further power than to ascertain and determine whether the prisoner stands charged with a criminal offence subjecting him to imprisonment; and whether the commissioner possessed competent authority to inquire into and adjudge upon that complaint. I find affirmatively in this case, on both those inquiries, and, therefore, decide that I have no authority, under this writ, to review the justness of the decision of the commissioner. The president, therefore, had due authority for the warrant issued by him for the extradition of the prisoner. The court, if acting as the committing magistrate, in this instance, might have doubted whether the law, properly interpreted, would support a charge of forgery for the fabrication of the draft in question, and might have declined to commit the prisoner on the charge; but it possesses no authority to rejudge that point, on this writ. The farthest the court could go, under this writ of habeas corpus, after ascertaining that there was legal proof before the magistrate, tending to support the accusation, would be to bail the prisoner, if this particular case were bailable." The clear purport of these views is, that the court may inquire whether the commissioner had jurisdiction over the case, whether he was authorized to institute an inquiry into the crime, and whether he had before him legal evidence tending to prove the accusation, but that it can go no farther, and act as a court of review, as if it had before it a writ of error

or an appeal, under an affirmative jurisdiction to review the case by such means. This was, also, the view of Judge Ingersoll, in Re Heilbronn [supra], where he says: "Where there is any legal evidence before the commissioner to establish the charge, and that legal evidence is deemed by him sufficient, no matter how many others may deem it insufficient, and he grants a warrant of commitment, that commitment must stand, and no judge has a right to disregard it, or to render it ineffectual, at least not till the expiration of two calendar months after it shall have been issued. In such a case, no one can revise the opinion of the commissioner, but the president. The president has that power. If he should be of opinion that the evidence taken before the commissioner on the hearing was not sufficient to sustain the charge, then it would be his duty to withhold a warrant of extradition. If he should be of opinion that it was sufficient, then it would be his duty to grant such warrant. The necessities of the case, therefore, do not require that I should express an opinion upon the sufficiency of the evidence upon the hearing before the commissioner."

The opinion delivered by Mr. Justice Nelson in Re Kaine, 14 How. [55 U. S.] 147, shows, that the grounds upon which he proceeded in holding that Kaine ought to be discharged were, that the commissioner had no jurisdiction of the case, because there had been no preliminary mandate from the president, and because the commissioner was not an officer authorized to hear the case, and because there was no competent evidence, that is, no legal evidence, before the commissioner, the only evidence being depositions which Mr. Justice Nelson regarded as not having been properly authenticated. These grounds are repeated by him in Re Kaine [Case No. 7,597]. He went, in that case, no farther.

The view thus taken was extended by the remarks made in Re Henrich, as before cited. But, in that case, the court did not discharge the prisoner. In the case of In re Farez [Id. 4,644], the question was wholly one as to the jurisdiction of the commissioner, and the prisoner was discharged on the ground that the warrants which he originally issued for the arrest of the prisoner were void. Subsequently, in regard to the same person, in the case of In re Farez [Id. 4,645], this court, held by myself, discharged him after he had been finally committed for extradition by a commissioner, on the sole ground that the commissioner, in the proceedings before him, had erred in excluding the testimony of the prisoner, when offered in his own behalf; but the discharge was only from the final commitment, and he was held under the original warrant of arrest, in order that the examination might be proceeded with de novo before the commissioner. This ruling was in accordance with the view held in Re Henrich. The court not only examined the question of the jurisdiction of the commissioner, and the question whether he had before him legal and competent evi-

dence, but it went farther. Afterwards, in Re Farez [Id. 4,646], on a habeas corpus before the circuit judge, in this court, in the case of the same prisoner, his discharge was sought on the ground that, in pursuance of the previous decision in the case, he ought to have been wholly discharged and ought not to be held on the original warrant of arrest, and, farther, that there were other errors for which he ought to be discharged. The court examined the grounds alleged against the jurisdiction of the commissioner, and held that he had jurisdiction, and that the prisoner was properly held under the warrant, and that the examination, which was in progress, must proceed. But the judge intimated a doubt as to whether the prior decision, discharging the prisoner from final commitment because of the error in excluding his testimony, was correct. He says: "If, on the examination, error occurs, by the exclusion of testimony which was admissible, it may be that the proceeding in that respect can be reviewed on habeas corpus. Such was Judge Blatchford's opinion. * * * I find nothing in the acts of congress, or in any rule of law with which I am familiar, which made it necessary that Judge Blatchford should go one step further than he did, if, indeed, it be true that a habeas corpus can be issued at all for any such purpose."

It thus appears, that the only case in which the rule announced in the case of In re Henrich as the proper one, has had any operative effect for the benefit of a prisoner, was that of Farez; and that the propriety of the rule and of its application to that case, was doubted at the time by the circuit judge.

The case of In re Macdonnell [Case No. 8,771] came before the circuit judge subsequently, on writs of habeas corpus and certiorari. The prisoner was under arrest, in proceedings for extradition, on a warrant issued by a commissioner, and the examination was in progress. The questions examined by the court went solely to the jurisdiction of the commissioner, on the ground of alleged defects on the face of the warrant of arrest and of the complaint on which it was issued, and on the face of the preliminary mandate issued by the president. It was urged, that the commissioner had received in evidence a document which was not legally admissible, but the court declined to consider that question at that time, and said: "If that suggestion were well founded, it would not defeat his jurisdiction." The proceedings in the Case of Macdonnell resulted in his final commitment by the commissioner to await his surrender by the president. The case then came before this court, held by the circuit judge and myself (In re Macdonnell [supra]), upon writs of habeas corpus and certiorari. In disposing of the case the court first examined questions which went to the jurisdiction of the commissioner and then proceeded to consider the allegation that the commissioner had received certain incompetent evidence, consisting of depositions. It held that such dep-

ositions were admissible, as being properly certified under the acts of congress on the subject, and as being made, by such acts, admissible in evidence. Those were depositions taken abroad before a warrant of arrest was issued abroad, and were depositions upon which such warrant of arrest abroad was issued. Supplemental depositions, taken abroad after the warrant of arrest abroad was issued, had been received in evidence by the commissioner. It was contended that there was error in admitting them in evidence, but the court held that, even though they were inadmissible, their reception furnished no ground for the discharge of the prisoner. In the opinion of the court, delivered by the circuit judge, these observations are made on this subject: "The arguments urged upon our attention proceed very much upon the assumption, which is entirely erroneous, to wit, that, in this proceeding, under the writ of habeas corpus, we are sitting as an appellate tribunal. That is not our relation to the commissioner. A judge issuing a writ of habeas corpus, or a court issuing a writ of habeas corpus, in these cases, is exercising an independent and original jurisdiction, with a right to inquire, doubtless, whether the prisoner is legally held. What shall be the scope and extent of that inquiry, has been very much controverted in the courts of this circuit. We say, on that subject, first, that we are not sitting as an appellate tribunal, for the purpose of reviewing the proceedings before the commissioner, as upon allegation of error. * * * The question to be determined, upon habeas corpus, in these cases, is, as we apprehend—is the prisoner rightly held, or is he to be discharged? If the commissioner, having acquired jurisdiction of the subject-matter, and of the prisoner, commits an error in the reception of evidence, it does not follow, by any legal rule, that his proceedings are to be held for naught and void for error. The prisoner may, nevertheless, be legally held." The opinion then proceeds to recite the foregoing adjudications in this circuit as to the power and duty of the court, on habeas corpus and certiorari, to entertain the question of the sufficiency of the evidence before the commissioner to warrant the commitment for surrender, and arrives at the conclusion, that notwithstanding what was said in the Henrich Case, and what was done in the Farez Case, the question whether, in an extradition case, the court is at liberty, on habeas corpus, to weigh the evidence before the commissioner and inquire whether it would have reached the same conclusion, and, if it would not, to discharge the prisoner, is still open for consideration. The question was not, then, definitely passed upon, but, assuming that an inquiry into the evidence could be made by the court, the court held, on the evidence in that case, that the commitment of the prisoner for extradition was justified.

The question thus referred to is presented

in this case, and is now to be decided. It is contended, for the prisoner, that this court, on these writs, is to examine into the merits of this case, as fully as if the proceedings had originally been instituted before it.

The treaty with Belgium provides (article 6) that a preliminary warrant shall be issued by the president, for the apprehension of the fugitive, "in order that he may be brought before the proper judicial authority for examination," and that, "if it should then be decided, that, according to the law and the evidence, the extradition is due, pursuant to the treaty, the fugitive may be given up, according to the forms prescribed in such cases." In the treaty with Prussia, of June 16, 1852 (10 Stat. 965), the language of article 1 is, that "the respective judges and other magistrates of the two governments shall have power, jurisdiction and authority, upon complaint made under oath, to issue a warrant for the apprehension of the fugitive or person so charged, that he may be brought before such judges or other magistrates respectively, to the end that the evidence of criminality may be heard and considered, and if, on such hearing, the evidence be deemed sufficient to sustain the charge, it shall be the duty of the examining judge or magistrate to certify the same to the proper executive authority, that a warrant may issue for the surrender of such fugitive." The language of this treaty with Prussia implies that, if the examining magistrate deems the evidence sufficient to sustain the charge, and so certifies to the president, a warrant of surrender must issue, much more strongly than does the language of the treaty with Belgium. Yet, in the case of this very prisoner, when his surrender was asked under the treaty with Prussia, for the same alleged offences of murder and arson that are involved in the present case, after the examining commissioner had committed him for extradition, and this court had, on writs of habeas corpus and certiorari, held the commitment to be legal, and the proceedings had been certified to the president, the president refused to issue a warrant of surrender. In re Stupp [Case No. 13,562]. In that case, his refusal was based upon the construction of the treaty. It is not to be doubted that he might, under like circumstances, properly base his refusal upon want of sufficient evidence of criminality. His refusal was in the exercise of an undoubted right. Whether he would have authority to order and enforce the surrender of a fugitive, after his discharge on habeas corpus subsequently to his commitment by a magistrate for surrender, it is not necessary now to consider. Action, such as was lawfully had in the Case of Stupp, shows that the decision of a court on habeas corpus in an extradition case, that the prisoner is lawfully held, is not binding on the executive in reference to the same question of law. Nor could it be binding on the executive if, on the writ, the prisoner were declared to be lawfully held on the facts

and merits of the case. The 1st section of the act of August 12, 1848 (9 Stat. 302), which is re-enacted as section 5270 of the Revised Statutes, provides, in substance, that, if, on the hearing before the magistrate who issues the warrant of arrest, he deems the evidence sufficient to sustain the charge under the provisions of the treaty, he shall certify the same, together with a copy of all the testimony taken before him, to the secretary of state, that a warrant may issue, upon the requisition of the proper authorities of the foreign government, for the surrender of the accused, according to the stipulations of the treaty, and he shall issue his warrant for the commitment of the accused to the proper jail, there to remain until such surrender shall be made. The 3d section of said act, which is re-enacted as section 5272 of the Revised Statutes, provides, in substance, that it shall be lawful for the secretary of state to order the person so committed to be delivered to the foreign government, to be tried for the crime in question. Under these provisions of law, the president has undoubtedly the right to refuse to surrender the accused, even though a warrant of commitment for his surrender is issued by the examining magistrate, and his certificate that the evidence is sufficient to sustain the charge is laid before the president, although the president would have no right to surrender the accused, in the absence of such certificate. The provision of the statute, that, with the certificate that the magistrate deems the evidence sufficient to sustain the charge, he is also to certify to the secretary of state a copy of all the testimony taken before him, indicates, that the executive discretion which the president has a right to exercise as to surrendering or not surrendering the accused is to be exercised on a consideration of the testimony in the case.

The statute gives no right of appeal or review to be exercised by any court or judicial officer. The finding of the magistrate and the testimony are not to be certified to any court or judge, but are to be certified to the secretary of state, as an executive officer representing the president in respect to extradition matters and intercourse with foreign governments. After such certificate, finding the evidence sufficient and reporting the testimony, is made, the president may or may not order the surrender. In practice, the executive has claimed and exercised the right, under such circumstances as have been shown, to refuse a surrender, even on a point as to which, on habeas corpus, it was judicially held, in the particular case, that a surrender was proper. Everything in the statute indicates that no review of the decision of the committing magistrate on the facts was contemplated, other than a review by the executive. The chief justice of the supreme court of the United States may be the examining and committing magistrate. It could never have been intended, that, under a writ of habeas corpus, any judge of the

United States, or even one judge after another, as long as the prisoner should remain in custody, should re-examine the facts in the case, until, in the end, some one of them should differ in opinion with the chief justice as to the force of the testimony, and should discharge the prisoner. As was said in Re Macdonnell [supra]: "If the judge, or the court, in these cases where extradition is sought, is at liberty, on habeas corpus, to weigh the evidence before the commissioner, and inquire whether they would have reached the same conclusion, the result is, that the finding of the commissioner, and the finding of successive courts and judges issuing successive writs of habeas corpus, so long as judges can be found, instead of having any force or effect, can be assailed, and assailed again, until at last, perhaps, some doubting mind may be found, who will say, 'I would have reached a different conclusion upon the evidence,' and thereupon discharge the prisoner. To that view of the duty of the court, touching the weight of evidence before the commissioner, we cannot subscribe."

In full conformity with these views, the great purposes of the writ of habeas corpus can be maintained, as they must be. The court issuing the writ must inquire and adjudge whether the commissioner acquired jurisdiction of the matter, by conforming to the requirements of the treaty and the statute; whether he exceeded his jurisdiction; and whether he had any legal or competent evidence of facts before him, on which to exercise a judgment as to the criminality of the accused. But, such court is not to inquire whether the legal evidence of facts before the commissioner was sufficient or insufficient to warrant his conclusion. Nor, if there was legal and competent evidence of facts before the commissioner, for him to consider in making up his decision as to the criminality of the accused, is the court, on habeas corpus, to hold the proceedings illegal and to discharge the prisoner because some other evidence was introduced which was not legal or competent, but was held to be so by the commissioner and was considered by him on the question of fact, or because the court, on a consideration of all the evidence which the commissioner considered, would have come to a different conclusion, or because the court, on an exclusion of such of the evidence as it may think was not legal or competent, would come, on the rest of the evidence, to a different conclusion of fact from that at which the commissioner arrived. In other words, the proper inquiry is to be limited to ascertaining whether the commissioner had jurisdiction, and did not exceed his jurisdiction, and had before him legal and competent evidence of facts whereon to pass judgment as to the fact of criminality, and did not arbitrarily commit the accused for surrender, without any legal evidence.

These principles we regard as in harmony with the current of decisions made by the supreme court, as cited in the case of Ex parte Lange, 18 Wall. [85 U. S.] 166, and with the doctrine laid down in that case, and as drawing the proper line of distinction between what can and what cannot be reviewed on habeas corpus, in a case where no affirmative direct power of review is given to the court issuing the writ, other than what is implied in the power to issue such writ, and where a power of review is substantially given by statute to, and in practice exists in, the executive department of the government.

Under these principles, the proceedings before the commissioner in this case must be examined.

It is contended, for the prisoner, that there was no legal evidence before the commissioner, of the commission of either of the crimes charged, on the ground that none of the documents or papers produced from Belgium were proved in such manner as to be admissible in evidence.

The 2d section of the act of August 12th, 1848 (9 Stat. 302), which was entitled, "An act for giving effect to certain treaty stipulations between this and foreign governments for the apprehension and delivering up of certain offenders," was in these words: "In every case of complaint as aforesaid, and of a hearing upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in any such foreign country may have been granted, certified under the hand of the person or persons issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended." The act of June 22, 1860 (12 Stat. 84), provided as follows: "In all cases where any depositions, warrants or other papers, or copies thereof, shall be offered in evidence upon the hearing of an extradition case under the second section of the act entitled, 'An act for giving effect to certain treaty stipulations between this and foreign governments for the apprehension and delivery up of certain offenders,' approved August twelfth, eighteen hundred and forty-eight, such depositions, warrants and other papers, or copies thereof, shall be admitted and received for the purposes mentioned in the said second section, if they shall be properly and legally authenticated, so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any paper or other document so offered is authenticated in the manner required by this act." It was held by this court, in Re Henrich [Case No. 6,369], that the effect of this act of 1860 was to enlarge the class of documentary evidence which might be adduced in support of the charge of criminality, be-

yond that authorized by the 2d section of the act of 1848, so as to admit any depositions, warrants, or other papers, which were so authenticated that the tribunals of the country where the offence was committed would receive them for the same purpose. The 2d section of the act of 1848 provided for the admission in evidence only of copies of the depositions on which an original warrant of arrest in the foreign country was granted, and required that such copies should be certified under the hand of the person issuing such warrant, and should be attested upon the oath of the party producing them to be true copies of such original depositions, and then allowed such copies to be received in evidence of the criminality of the accused. The act of 1860 provided for the admission in evidence of any depositions, warrants, or other papers, or copies thereof, on the hearing of an extradition case under the 2d section of the act of 1848, and enacted that they should be received in evidence for the purposes mentioned in said 2d section, that is, to show the criminality of the accused, if they should be legally and properly authenticated, so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused should have escaped; and further enacted, that the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country should be proof that any paper or other document so offered was authenticated in the manner required by the act of 1860. Such being the state of the statute law, the Revised Statutes of the United States, approved June 22d, 1874, enact, in section 5271, as follows: "In every case of complaint, and of a hearing upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in any foreign country may have been granted, certified under the hand of the person issuing such warrant, and attested, upon the oath of the party producing them, to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended, if they are authenticated in such manner as would entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party escaped. The certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any paper or other document so offered is authenticated in the manner required by this section." Section 5271 is the only section of the Revised Statutes which relates to the subject of evidence in extradition cases. By section 5596 it is provided, that all acts of congress passed prior to the 1st of December, 1873, any portion of which is embraced in any section of the Revised Statutes, are repealed. Some portion of the 2d section of the act of 1848 is embraced in section 5271 of the Revised Statutes. The subject-matter of both sections is the same,

namely, the admissibility in evidence of copies of the depositions on which an original warrant of arrest was granted in the foreign country. That is the subject-matter of both sections, and the only subject-matter of either. The 2d section of the act of 1848 prescribed two requisites in respect to the copies of such depositions, and only two, to wit, that they should be certified under the hand of the person or persons issuing such warrant, and should be attested upon the oath of the party producing them to be true copies of the original depositions. Section 5271 prescribes a third and additional requisite, besides prescribing the two above named, to wit, that the copies shall be authenticated in such manner as would entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party escaped, and also provides a mode of proof in regard to such authentication. But, if we turn to the act of 1860, we find that its subject-matter is not, nor is any portion of it, embraced in section 5271 of the Revised Statutes. The entire subject-matter of section 5271 is taken from the 2d section of the act of 1848, and no part of it is taken from the act of 1860. It is true, that the third and additional requisite, before referred to as found in section 5271, appended to the two requisites found in the 2d section of the act of 1848, is a requisite the language of which is borrowed from the act of 1860, and is there found appended to a different subject-matter. But, in no proper sense, is any portion of the act of 1860, that is, any portion of its subject-matter, embraced in section 5271. Consequently, by virtue of section 5596, section 5271 is not in force in lieu of the act of 1860, although it is in force in lieu of the 2d section of the act of 1848. Moreover, section 5596 refers to "all parts of such acts not contained in such revision," as "having been repealed or superseded by subsequent acts, or not being general or permanent in their nature." The expression, "all parts of such acts," means, all parts of acts passed prior to December 1st, 1873, any portion of which is embraced in any section of the revision; and the purport of the provision is, that, if any portion of a particular act is embraced in any section of the revision, the parts of the same act which are not contained in the revision have been repealed or superseded by subsequent acts, or were not general and permanent in their nature. But, this leaves unaffected the acts no portion of which is embraced in any section of the revision; and, in a subsequent part of section 5596, it is expressly enacted, that all acts passed prior to December 1st, 1873, "no part of which are embraced in said revision, shall not be affected or changed by its enactment." These provisions of section 5596 qualify the general language of section 5595, to the effect that the preceding 93 titles embrace the general and permanent statutes of the United States in force on the 1st of December, 1873,

as revised and consolidated. . If there be a general and permanent statute which was in force on the 1st of December, 1873, and no part of it is to be found in the Revised Statutes, it is to be regarded as still in force. There is nothing inconsistent with the provisions of section 5271 in regarding the act of 1860 as still in force. The act of 1860 applies to all depositions, documents and papers, except those referred to in section 5271, namely, depositions on which an original warrant in the foreign country was granted, and section 5271 applies solely to the latter depositions. It cannot be said that section 5271 embraces the entire subject of the documentary evidence to which the statutes in force when the Revised Statutes were enacted related, because, the subject of the 2d section of the act of 1848 is transferred bodily to section 5271, while nothing of the subject of the act of 1860 is transferred to that section. Therefore, it cannot be said that the act of 1860 is repealed by implication, especially, as the declaration, in section 5596, as to what is repealed, does not include the act of 1860. It may very well have been true, that the designation of any depositions, in the act of 1860, had the effect to make admissible, under that act, depositions on which an original warrant of arrest was granted abroad, on a compliance only with the requisites prescribed in the act of 1860, and without a compliance with the requisites which had been prescribed in the 2d section of the act of 1848. But, congress have now provided, by section 5271, that the depositions on which an original warrant of arrest was granted abroad shall be admissible only on a compliance with the terms of that section, while it has left the act of 1860 to be in force, and to apply to all the subject-matter covered by it, except the depositions mentioned in section 5271. The court has no right, in view of the precise terms of the statute law, to read section 5271 as if all there is in it that is taken from the 2d section of the act of 1848 were out of it, and as if, in the place of that, there were inserted in it the subject-matter of the act of 1860.

The verified complaint in this case, made by the consul of Belgium, at New York, has annexed to it an original warrant for the arrest of the accused, issued by M. Giron, examining judge of the tribunal of first instance at Brussels, on the 27th of April, 1872. It purports, on its face, to be issued "upon the documents in the case, and on motion of the king's attorney, bearing date the 14th of October, 1871." It does not specify what the documents referred to are, nor are there any documents annexed to the complaint, or referred to in it, as being the documents referred to in the warrant.

There is, also, in evidence a copy of what may be called an indictment or accusation of the accused by the court of appeals at Brussels. This paper is in the form of a decree dated June 6th, 1872, which states, that

the court has "seen the documents of the proceedings instituted by the examining judge of the court of the first instance, of Brussels," but it does not state what those documents are. It also states, that the court has heard the report made on the subject to the court of indictments by the deputy attorney general, to the purport that the attorney general of the court of appeals of Brussels "has seen the documents in the case, and the order of arrest issued the 31st of May, 1872, by the council chamber of the tribunal of the first instance, of Brussels," against the accused, but what those documents are is not stated. The order of arrest is afterwards set forth, and is not the same order of arrest first above referred to. The decree goes on to state, that the attorney general states that there exists against the accused charges sufficient to justify his indictment, for having committed the crimes charged in this proceeding, that those crimes are provided for and made punishable according to the provisions of certain specified articles of the Penal Code, and that the attorney general prays the confirmation of such order of arrest, and the commitment of the accused for trial. The decree then states, that the clerk has read to the court "all the documents in the case," but what they are is not stated. The decree then goes on to confirm the order of arrest of May 31st, 1872, and to commit the accused for trial, and to direct an indictment to be drawn up.

There are also put in evidence 86 documents, all of which purport to be copies taken from the records of the clerk's office of the tribunal of first instance, at Brussels. All of them bear the attestation of the deputy clerk of such tribunal, and his signature is verified by M. Giron, the judge who issued the warrant of arrest of April 27th, 1872. The signature of M. Giron is verified by that of M. Pulzeys, the general secretary of the ministry of justice at Brussels; and the signature of M. Pulzeys is verified by that of Leopold Orban, a councillor in the ministry of foreign affairs of Belgium. Of these 86 documents, 55 are of dates from October 14th, 1871, to April 26th, 1872, that is, prior to the date of the order of arrest of April 27th, 1872; 7 others are of dates from April 29th, 1872, to May 30th, 1872, that is, prior to the order of arrest of May 31st, 1872; and 24 others are of dates subsequent to June 6th, 1872. A large portion of these 86 documents are copies of depositions. None of them were specifically offered in evidence as copies of the depositions on which either of the orders of arrest before referred to was granted. They are not certified under the hand of any person to be such copies, nor are they attested upon the oath of any person to be such copies. There is, therefore, not a full compliance with the requirements of section 5271 in respect to any of them. But, if it be proper to hold, in re-

spect to such of them as bear dates anterior to the issuing of the warrant of arrest of April 27th, 1872, that those depositions must be regarded as the depositions on which that warrant was issued, so that they were not properly receivable in evidence, because of a non-compliance with the requirements of section 5271 in regard to the certificate and the oath therein required. there remain the 31 documents and depositions which bear date on and after April 29th, 1872, and the indictment or accusation, before mentioned. These papers must all of them be regarded as papers offered and receivable in evidence under the act of 1860, and as not falling under section 5271. Each of them has appended to it a certificate in this form, made by the minister resident of the United States to Belgium: "I, John Russell Jones, minister resident of the United States to Belgium, do hereby certify. that Leopold Orban, whose signature is subscribed to the foregoing paper, is, and was at the date of the same, a councillor in the ministry of foreign affairs of Belgium, and to any documents by him so signed and sealed, full faith and credit is and ought to be given; and I do hereby certify, that the foregoing document is legally and properly authenticated, so as to entitle it to be received in evidence in support of the criminal charges mentioned therein, and for similar purposes mentioned in the second section of the act of congress entitled 'An act for giving effect to certain treaty stipulations between this and foreign governments, for the apprehension and delivery up of certain offenders.'" Each of the certificates bears the signature of the minister resident of the United States to Belgium, and the seal of the legation of the United States, and each is dated October 9th. 1874.

It is objected to this certificate, that it is defective in omitting to say that the document to which it refers is authenticated so as to entitle it to be received in evidence by the tribunals of Belgium. The certificate does substantially so say. The officer certifying is a local officer, accredited as minister resident to Belgium. It is only as the principal diplomatic officer of the United States resident in Belgium, that he is authorized, in this case, to make any certificate, inasmuch as the accused escaped from Belgium. The papers certified came from the records of the tribunals of Belgium, and are authenticated by functionaries of Belgium, and the plain intendment of the certificate. in saying that the document is authenticated so as to entitle it to be received in evidence in support of the criminal charges mentioned therein, is, that it is authenticated so as to entitle it to be received in evidence by the tribunals of Belgium, in support of the criminal charges mentioned therein. It is only in respect of evidence entitled to be received by those tribunals, that the minister resident to Belgium has any power to make a certificate of authenticity, and the criminal charges mentioned in the documents, and in support of which it is certified that the documents are entitled to be received in evidence, are charges of crimes against the laws of Belgium, and are charges cognizable by those laws.

The Revised Statutes were approved by the president and became a law on the 22d of June. 1874, but they were not accessible in a printed form until early in March, 1875. The certificates to the documents from abroad, in this case, were obtained in October, 1874, and the papers were put in evidence in December, 1874, and January, 1875. The proceedings took place with reference to the statutes as they were before the Revised Statutes were enacted, and were entirely regular in that view. It is satisfactory to be able to conclude that there is nothing in the Revised Statutes which affects the operation of the act of 1860, except in respect to the particular depositions named in section 5271; for it cannot be supposed that, if the attention of congress be now directed specially to the legislation on the subject, it will repeal the act of 1860, or will allow section 5271 to continue to have the operation which it must have in respect to depositions on which an original warrant abroad was granted, when the 2d section of the act of 1848 had no such operation after the enactment of the act of 1860. On the contrary, as the act of 1860 was intended to enlarge the class of documentary evidence which might be adduced in support of the charge of criminality, and as it is not known that any reason existed for legislation to afford less facilities for the admission of documentary evidence, and as a review of the legislation leads properly to the inference, that, athough section 5271 of the Revised Statutes is plain. as to its meaning, as it stands, the putting it into such form as makes it apply solely to the subject-matter of the 2d section of the act of 1848. and throw greater restrictions around the admission of the depositions named in that section. was an inadvertence, it is presumed that the inclination of congress will be so to amend section 5271 as to restore the law to the condition in which it was before that section was enacted.

Besides the documents thus properly received in evidence, there was considerable oral testimony taken before the commissioner. He had. therefore. legal testimony before him, other than the depositions taken prior to the issuing of the first warrant, on which to pass judgment in respect to the criminality of the accused. Such evidence contains testimony tending to prove the death of the deceased, his death by violence, the simultaneous burning of articles in the room where he died, the simultaneous stealing from the safe in the same room of securities to a large amount in value, the flight of the accused to England the same night, the previous poverty of the accused,

his possession of money in England, his previous acquaintance with the deceased and familiarity with the premises, a previous quarrel of his with the deceased, the flight of the accused to this country, and the tracing to his possession, while here, of securities shown to have been in the safe of the deceased at the time of his death. On these points and others bearing upon the question of criminality, testimony legally admitted contains materials for a decision of the commissioner on the question of fact, as to whether there was before him such evidence of criminality, as, according to the laws of this place, would justify the apprehension of the accused and his commitment for trial, if the crimes charged had been committed in this place. The commissioner having decided such question of fact, his decision cannot, on the principles before stated, be reviewed by this court, on habeas corpus. The writ must, therefore, be discharged, and the prisoner be remanded to the custody of the marshal.

WOODRUFF, Circuit Judge. I concur fully in the views stated by Judge BLATCHFORD in the foregoing opinion, and in the result.