**Carlos Remo MANRIQUE CARRENO, Petitioner,**

v.

**U.S. Magistrate Linnea JOHNSON; The U.S. Attorney General Ms. Janet Reno; The U.S. Attorney for Miami Mr. Kendall Coffey, and Mr. Daniel J. Horgan, The U.S. Marshal for the District of Miami, Florida, Respondents.**

No. 95–1921–CIV.

United States District Court, S.D. Florida.

Sept. 22, 1995.

Alfonso E. Oviedo–Reyes, Miami, FL, for petitioner.

Kendall Coffey, U.S. Attorney, Alicia Valle, Asst. U.S. Attorney, Miami, FL, for respondents.

## MEMORANDUM OPINION

HIGHSMITH, District Judge.

THIS CAUSE came before the Court for hearing on Carlos Remo Manrique Carreno's Petition for Writ of Habeas Corpus, held on September 15, 1995. At the conclusion of the

hearing, the Court denied Manrique Carreno's petition for writ of habeas corpus, as well as his request for stay of extradition. Immediately thereafter, the Court issued a written order embodying these rulings and indicating that this memorandum opinion would be forthcoming shortly.

## PROCEDURAL BACKGROUND

On June 1, 1995, the Honorable Linnea R. Johnson, United States Magistrate Judge, Southern District of Florida, issued a Certification of Extraditability and Order of Commitment as to Petitioner Carlos Remo Manrique Carreno, whose extradition is sought by the Government of Peru. (*In the Matter of the Extradition of Carlos Remo Manrique Carreno,* Case No. 94–3488–JOHNSON). On June 23, 1995, Manrique Carreno filed a petition for writ of habeas corpus, which came before the Honorable Edward B. Davis, United States District Judge, Southern District of Florida, seeking review of Magistrate Judge Johnson's order. (*Manrique Carreno v. U.S. Magistrate Linnea Johnson, et al.,* Case No. 95–1355–CIV–DAVIS). Shortly thereafter, on July 24, 1995, Manrique Carreno filed a "Motion to Allow Interview of Petitioner by the Immigration and Naturalization Service to Determine a Pending Political Asylum Application", which Judge Davis deemed a motion for stay of extradition pending the I.N.S.'s review of Manrique Carreno's political asylum application. By order dated August 18, 1995, Judge Davis denied the petition for writ of habeas corpus, as well as the motion for stay of extradition. *See* Order Denying Petition for Writ of Habeas Corpus, Case No. 95–1355–CIV–DAVIS, Aug. 18, 1995. Thereafter, on August 29,

1995, the Secretary of State issued a warrant for Manrique Carreno's surrender to Peruvian authorities. (Exhibit 4 to Government's Answer and Opposition to Petition for Writ of Habeas Corpus, D.E. # 4).[1]

On September 1, 1995, Manrique Carreno filed the petition for writ of habeas corpus, which came before the undersigned District Judge. Manrique Carreno invoked this Court's jurisdiction under 28 U.S.C. § 2241, as a person who is in the custody of federal authorities. The petition is predicated on two separate grounds:

Ground 1. THE U.S. MAGISTRATE FOUND AGAINST THE PETITIONER AND GRANTED THE EXTRADITION, AS REQUESTED, BASED ON A LAW THAT HAS BEEN FOUND TO BE UNCONSTITUTIONAL.

Ground 2. IRREPARABLE HARM WILL BEFALL THE PETITIONER IF HE IS RETURNED TO PERU WHERE HE FEARS POLITICAL PERSECUTION.

(Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. Sec. 2241 by a Person in Federal Custody, D.E. # 1.). In addition to his prayer for issuance of a writ of habeas corpus, the petitioner seeks a temporary and permanent injunction barring the named respondents from surrendering or otherwise causing him to depart from the United States; an order vacating Magistrate Judge Johnson's order; and an order allowing the petitioner to stay in the United States pending a decision by the Immigration and Naturalization Service on his application for political asylum.[2] In a subsequent pleading, filed September 8, 1995, Manrique Carreno seeks

---

**1.** Beside the relief sought in the petition before Judge Davis, Manrique Carreno filed the following motions before Magistrate Judge Johnson: Emergency Motion for Temporary Stay of Execution of Order of Extradition, filed June 9, 1995; Motion for a Temporary Stay of Execution of Extradition Order, filed June 30, 1995; and Renewed Motion for a Stay of Execution to Allow Determination by the Executive Branch of a Pending Political Asylum Application, filed July 24, 1995. Magistrate Judge Johnson denied these motions by Orders dated June 19, 1995, July 6, 1995, and August 4, 1995, respectively. (*In the Matter of the Extradition of Carlos Remo Manrique Carreno.)*

Manrique Carreno has also filed two other petitions for writ of habeas corpus. These cases have been assigned to the Honorable Wilkie D. Ferguson, United States District Judge, Southern District of Florida (Case No. 95–1237–CIV–FERGUSON) and the Honorable Federico A. Moreno, United States District Judge, Southern District of Florida (Case No. 95–1896–CIV–MORENO), respectively.

**2.** Manrique Carreno's petition includes a prayer for attorney's fees and costs, but provides no legal support for such request. In any event, the Court's denial of the petition renders such request moot.

leave to add the Secretary of State, Warren Christopher, as an additional party to the habeas corpus petition, and requests an emergency hearing to stay execution of the surrender warrant and to vacate the same as unconstitutional.[3]

The Court has determined that the issues raised by Manrique Carreno relative to political persecution and political asylum have already been addressed by Judge Davis' Order of August 18, 1995. As announced at the September 15, 1995, hearing, therefore, the Court will not consider this ground any further and summarily denies the petition for writ of habeas corpus as to Ground # 2. For the same reason, the Court denies Manrique Carreno's request for stay of extradition, and for an order allowing him to remain in the United States, pending determination of the political asylum matter. Thus, the Court proceeds to address the only issue raised by Manrique Carreno for the first time in the instant petition; namely, that the extradition law has been found to be unconstitutional.

## DISCUSSION

Manrique Carreno's argument that the extradition statute, 18 U.S.C. § 3184, is unconstitutional, is entirely derived from the scholarly opinion recently issued by the Honorable Royce C. Lamberth, United States District Judge, District of Columbia in *Lobue v. Christopher*, 893 F.Supp. 65 (D.D.C.1995). In *Lobue*, Judge Lamberth issued a declaratory judgment, declaring the extradition statute unconstitutional, as violative of the separation of powers doctrine. As discussed at the September 15, 1995, hearing, the Court's first task in addressing Manrique Carreno's argument was to determine the reach of Judge Lamberth's ruling; i.e., whether the declaratory judgment is, in some fashion, dispositive of the issues before this Court. The Court answered this threshold question in the negative, for the reasons that are more fully discussed below. The second, and more challenging, task was to decide whether the

Court agrees with Judge Lamberth's reasoning. As is evident from the Court's rulings, the Court respectfully disagrees with such reasoning.

### I. Judge Lamberth's Ruling:

Title 18, United States Code, Section 3184, provides, in pertinent part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered.... If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184.

■ Judge Lamberth considered the text of the statute, the manner in which it has been interpreted by the three branches of government, and historical practice. This analysis led him to decide that the statute

---

**3.** Pursuant to Fed.R.Civ.P. 15(a), "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Manrique Carreno's request to join Warren Christopher predates the government's September 13, 1995, service of its answer and opposition to the petition. Therefore, the Court deems the petition amended as of right with regard to the additional respondent. The Court further notes that the government has not opposed the request for joinder.

confers upon the Secretary of State the authority to review the legal conclusions of extradition judges, in violation of the separation of powers doctrine embodied in the United States Constitution. In making this determination, Judge Lamberth invoked the well-established principle that "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch." *Plaut v. Spendthrift Farm, Inc.,* — U.S. —, —, 115 S.Ct. 1447, 1453, 131 L.Ed.2d 328 (1995) (citing *Hayburn's Case,* 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792)); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948). As a result of this determination, Judge Lamberth issued the following declaratory judgment: "[I]nsofar as it purports to confer upon members of the Executive branch the power to review decisions of Article [III] federal judges and United States magistrates, Title 18, s 3184 of the United States Code is hereby declared to violate the United States Constitution." *Lobue,* at 78. Furthermore, Judge Lamberth enjoined execution of the surrender warrants, which authorized the extradition of the plaintiffs in his case, Anthony J. Lobue and Thomas C. Kulekowskis, to Canada. He denied, however, the plaintiffs' motion for certification of a class composed "of all persons who are or in the future will be under a threat of extradition from the United States pursuant to 18 U.S.C. s 3184." *Id.* at 77. In denying the motion for class certification, Judge Lamberth expressed his anticipation that, upon issuance of his ruling, "the United States will not surrender any person in a manner which is inconsistent with the terms of the court's declaratory judgment." *Id.*

## II. The Reach of Judge Lamberth's Ruling:

■ Since this Court is not bound by Judge Lamberth's opinion, the Court need only address the effect of his ruling upon the Secretary of State and other executive branch respondents in this action.[4] Absent an injunctive sanction, a district court's declaration that a statute is unconstitutional does not bar the government from continuing to apply the statute pending review by the Court of Appeals and the United States Supreme Court. *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 155, 83 S.Ct. 554, 560, 9 L.Ed.2d 644 (1963). *See also Steffel v. Thompson,* 415 U.S. 452, 470, 94 S.Ct. 1209, 1221, 39 L.Ed.2d 505 (1974) (Brennan, J., concurring in part and dissenting in part) (quoting *Perez v. Ledesma,* 401 U.S. 82, 124–26, 91 S.Ct. 674, 696–97, 27 L.Ed.2d 701 (1971)) ("What is clear, however, is that even though a declaratory judgment has the force and effect of a final judgment, 28 U.S.C. § 2201, it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt."). Therefore, Judge Lamberth's August 31, 1995 declaratory judgment does not bar the government from proceeding under the extradition statute in the case of Manrique Carreno. Moreover, the August 31, 1995 ruling only enjoins execution of the surrender warrants for the two plaintiffs in Judge Lamberth's case. Therefore, the injunction has no direct effect on the extradition proceedings as to Manrique Carreno. Finally, the United States Supreme Court has determined that the doctrine of nonmutual offensive collateral estoppel does not apply against the government. *U.S. v. Mendoza,* 464 U.S. 154, 162, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984). Therefore, Judge Lamberth's ruling has no collateral estoppel effect upon this case.

■ Although the foregoing analysis was sufficient at the time the Court conducted the September 15, 1995, hearing, a subsequent ruling issued by Judge Lamberth mandates further consideration of this issue at this time. On September 15, 1995, after the Court had concluded its hearing and issued its order denying Manrique Carreno's petition, Judge Lamberth issued an additional order. (Order, *Lobue v. Christopher,* 893 F.Supp. 65). Judge Lamberth reconsidered his earlier denial of the plaintiffs' motion for class certification and granted the motion.

---

4. The defendants in *Lobue* are the Secretary of State, Warren Christopher; the U.S. Department of State; and the United States of America. As previously noted, Warren Christopher has been deemed joined by amendment to Manrique Carreno's petition.

He certified a plaintiff class consisting of "all persons who presently are or in the future will be under threat of extradition from the United States pursuant to 18 U.S.C. § 3181, *et seq.*, including all persons whose extradition has been or will be requested by another nation, all persons who are currently involved in extradition proceedings or in habeas corpus proceedings relating to their possible extradition, and all persons subject to extradition under a warrant issued pursuant to 18 U.S.C. § 3186." The August 31, 1995 order has been modified to enjoin the Secretary of State, the State Department, and the United States from surrendering not only the plaintiff, Lobue and Kulekowskis, but also any member of the plaintiff class. The order expressly provides that the injunction does not extend to extradition proceedings, only to surrender of a member of the plaintiff class. Thus, nothing in the latter order changes the Court's conclusion that Judge Lamberth's ruling has no direct or collateral effect upon the proceedings before it. In an abundance of caution, however, the Court issues this memorandum opinion, *nunc pro tunc,* as of September 15, 1995.

### III. The Issue of Unconstitutionality:

#### 1. Scope of Review:

 It is well established that a petition for writ of habeas corpus is the only avenue for review of a magistrate judge's order certifying extradition. *Artukovic v. Rison,* 784 F.2d 1354, 1355 (9th Cir.1986). Moreover,

> The scope of habeas corpus review of a magistrate's order is quite narrow. It is limited to a determination of "whether the magistrate had jurisdiction, whether the offense charged is within the treaty and ... whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty."

*Hill v. United States,* 737 F.2d 950, 951, n. 1 (11th Cir.1984) (quoting *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925)). Manrique Carreno's unconstitutionality argument in support of his request for an order vacating Magistrate Judge Johnson's order can only be predicated on the first of these three inquiries; i.e. the unconstitutionality of the statute, pursu-

ant to which Magistrate Judge Johnson entertained the matter and issued the certification of extraditability and order of commitment, deprives her of jurisdiction to issue such order.

Similarly, Manrique Carreno's request for a temporary and permanent injunction barring his surrender, his motion for a stay of execution of the surrender warrant, and motion to vacate the surrender warrant are based on the premise that the Executive branch's authority to hold him in federal custody pending extradition is predicated on an unconstitutional statute.

#### 2. Statutory Interpretation:

 A well-established principle of statutory construction requires that courts, whenever possible, interpret statutes in a manner that avoids constitutional difficulties. *See Frisby v. Schultz,* 487 U.S. 474, 483, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988). (To the extent that lower courts endorse a broad reading of legislative enactments, they run "afoul of the well-established principle that statutes will be interpreted to avoid constitutional difficulties."). *See also Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 953 F.2d 600, 604 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 182, 121 L.Ed.2d 127 (1992). (The Eleventh Circuit will closely scrutinize, and avoid whenever possible, a district court's "interpretation of a federal statute which raises serious constitutional problems or results in an unconstitutional construction."); *United States v. Brown,* 731 F.2d 1491, 1494 (11th Cir.1984) (selecting a narrow interpretation of a statute to avoid an unconstitutional construction); *Federal Election Comm'n v. Florida For Kennedy Comm.,* 681 F.2d 1281, 1287 (11th Cir.1982) ("Courts are under the duty to avoid, if possible, construing a statute in a manner that creates constitutional problems."). The Court is mindful of this precept and of an equally fundamental corollary, which states that constitutional issues will not be determined "in broader terms than are required by the precise facts to which the ruling is to be applied." *Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 569, 67 S.Ct. 1409, 1420, 91 L.Ed. 1666

(1947). *See also Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216 n. 14, 95 S.Ct. 2268, 2276 n. 14, 45 L.Ed.2d 125 (1975). (Courts considering the constitutionality of a statute will examine it "as applied" as well as "on its face.").

As previously noted, Judge Lamberth's determination that 18 U.S.C. § 3184 is unconstitutional is predicated on his consideration of the text of the statute, of the manner in which it has been interpreted by the three branches of government, and of historical practice. Keeping the foregoing canons of statutory construction in mind, the Court addresses each of these analytical prongs in turn.

### 3. The text of the statute:

 Section 3184 provides that, if the judicial officer, "deems the evidence sufficient to sustain a charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue ..." These words do not convey an affirmative grant of the power to review the extradition judge's determination. They prescribe the method by which the judicial officer shall convey a finding of extraditability to the Secretary of State, so that the Secretary "may" issue a surrender warrant.

According to Judge Lamberth's analysis, however, "There is simply no plausible explanation for why Congress would require the extradition judge to certify the evidence 'together with a copy of all the testimony taken before him,' other than to permit the Secretary to perform his own independent review of the legality of the extradition." *Lobue,* at 68. The Court differs with this conclusion. At least one, equally plausible, explanation readily comes to mind, namely, the compilation of a complete record for the purpose of forwarding such record to the country seeking extradition. Therefore, the Court finds no support in the language of the statute

itself for the proposition that the statute confers an impermissible power of review upon the Secretary of State.

### 4. The manner in which the statute has been interpreted by the three branches of government, and historical practice:

Although Judge Lamberth's interpretation is not supported by the text of the statute, a review of the commentary reveals that it is entirely consistent with a historical gloss whose genesis is found in an 1873 opinion from the Southern District of New York.[5] According to the commentators, prior to 1871, the Secretary of State performed only a ministerial function when issuing warrants of extradition, upon receipt of a certification of extraditability from a judicial officer, and upon assuring himself as to the regularity of the extradition proceedings.[6] In that year, the Secretary of State surrendered only four out of seven persons awaiting extradition to Great Britain, but provided no reason for his refusal to surrender the other three. *Id.*

In 1873, the Circuit Court for the Southern District of New York heard a petition for writ of habeas corpus brought by Joseph Stupp, alias Carl Vogt, who was facing extradition to Prussia for crimes alleged to have been committed in Belgium. *In re Stupp,* 23 F.Cas. 281 (C.C.S.D.N.Y.1873). District Judge Blatchford determined that the case fell within the United States' treaty of extradition with Prussia and Stupp was subsequently committed, pending the issuance of a warrant for his surrender. *Id.* at 293. In response to an inquiry from the Secretary of State, however, the Attorney General reached the opposite conclusion, and the Secretary of State, following that advice, declined to issue a warrant for Stupp's surrender. *Id.* at 295. Thereafter, under the terms of an extradition treaty with Belgium, Stupp was again certified extraditable by a United States commissioner and his petition for writ of habeas corpus came before Judge

---

5. In most significant respects, "United States extradition treaties are presently being implemented by legislation that is over a century old." 4 Michael Abbell & Bruno A. Ristau, *International Judicial Assistance* § 13–2–1, at 21 (1990).

6. *See e.g.,* IX M. Cherif Bassiouni, *International Extradition: United States Law and Practice* § 7–1 (1983); Note, *Executive Discretion in Extradition,* 62 Colum.L.Rev. 1313, 1315 (1962) and references cited therein.

Blatchford. *In re Stupp*, 23 F.Cas. 296 (C.C.S.D.N.Y.1875). In this case, Judge Blatchford engaged in a considerable analysis regarding the proper scope of habeas corpus review in extradition cases, and concluded that the reviewing court's inquiry should be limited to essentially the same one that courts apply today; i.e., the officer's jurisdiction and whether there was any evidence warranting the officer's findings. *Id.* at 303. In arriving at such a narrow scope of habeas corpus review, Judge Blatchford recounted the Secretary of State's prior refusal to surrender Stupp, stating:

> In that case, his refusal was based upon the construction of the treaty. It is not to be doubted that he might, under like circumstances, properly base his refusal upon want of sufficient evidence of criminality. His refusal was in the exercise of an undoubted right.

*Id.* at 302. Judge Blatchford continued:

> The provision of the statute, that, with the certificate that the magistrate deems the evidence sufficient to sustain the charge, he is also to certify to the secretary of state a copy of all the testimony taken before him[ ] indicates[ ] that the executive discretion which the president has a right to exercise as to surrendering or not surrendering the accused is to be exercised on a consideration of the testimony in the case.
>
> The statute gives no right of appeal or review to be exercised by any court or judicial officer. The finding of the magistrate and the testimony are not to be certified to any court or judge, but are to be certified to the secretary of state, as an executive officer representing the president in respect to extradition matters and intercourse with foreign governments. After such certificate, finding the evidence sufficient and reporting the testimony, is made, the president may or may not order the surrender. In practice, the executive has claimed and exercised the right, under such circumstances as have been shown, to refuse a surrender even on a point as to which, on habeas corpus, it was judicially held, in the particular case, that a surrender was proper. Everything in the statute

indicates that no review of the decision of the committing magistrate on the facts was contemplated other than a review by the executive.

*Id.*

In the next several years, documents emanating from both the executive and the legislative branches essentially adopted Judge Blatchford's interpretation of the statute. In 1881, the Solicitor General posed the following question and answer in an opinion rendered to the Secretary of State:

> The question here is, how far executive discretion extends in reviewing the judgment and testimony directed by the statute (Rev.Stats. sec. 5270) to be certified before you by the judicial officer who hears the charge in the first instance.
>
> I am of the opinion that the proceedings below come before you upon a *quasi certiorari,* and that your discretion extends to a review of every question therein presented.
>
> The due execution of the treaty, *including its not being abused so as to include persons who are not within its terms,* is after all an executive question, and after attentive consideration I am unable to restrain your powers within any narrower bonds.
>
> It is difficult to see why the judicial officer should certify the *testimony* before him as well as his *judgment* thereon, unless for the purpose of affording an opportunity for a reconsideration of the effect of that testimony.

17 *Op.Att'y Gen.* 184, 185–86 (1881).

Similarly, an 1882 Senate Report discussing the operation of the extradition statute that was currently on the books, states:

> In cases of extradition from the United States two distinct and independent functions are combined. Over the judicial functions the President has no control; he can make no delivery until the proper magistrate has considered and acted upon the case; and on the other hand the judiciary can neither order the delivery nor bind the action of the President; he may or may not, for reasons of which he is the sole judge, follow the judgment of the

court. This executive function of delivery after judicial action, with all the facts certified before the President, carries with it the power of reviewing all the proceedings and passing judgment upon their correctness. If the President deem these judicial proceedings illegal or defective in any respect he may decline to deliver the prisoner.

S.Rep. No. 82, 47th Cong., 1st Sess. 3 (1882).

Separation of powers difficulties attendant upon this broad interpretation of the executive's power of review do not appear to have surfaced in these discussions. It is noteworthy, however, that in discussing and adopting Judge Blatchford's narrow scope of habeas corpus review, the United States Supreme Court merely stated that "the magistrate is to certify his findings on the testimony to the secretary of state, that the case may be reviewed by the executive department of the government," without expressing an opinion as to the nature of such executive review. *Ornelas v. Ruiz,* 161 U.S. 502, 508, 16 S.Ct. 689, 691, 40 L.Ed. 787 (1896).

### IV. CONCLUSION

In this Court's view, no binding authority exists which compels an interpretation of the statute that raises constitutional difficulties. Therefore, the Court relies on its reading of the plain text of the statute and finds no facial unconstitutional infirmity. Moreover, the Court finds no indicia in this case that the Secretary of State conducted such review of Magistrate Johnson's judicial determination as to implicate the separation of powers doctrine. As applied to the case of Manrique Carreno, therefore, the statute also passes constitutional muster. Hence, the Court need not express an opinion regarding the constitutionality of the practice of conducting the review described in the foregoing historical discussion. In light of the foregoing, the Court need not reach the government's arguments analogizing the extradition process to presidential pardons and to probable cause determinations in connection with search and seizure warrants. The Court notes, however,

that such comparisons appear inapposite to the extradition process.

DONE AND ORDERED.